**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| IN RE JURO SYSTEM, INC., | Case No. 3:25-CV-00275-MMD-CLB |
| | **ORDER DENYING MOTION TO QUASH SUBPOENAS AND MOTION TO STRIKE** |
| | [ECF Nos. 1, 9] |

Pending before the Court is Cosimo and Clarissa Constantinos's (collectively "Petitioners") motion to quash subpoenas. (ECF No. 1.) On May 21, 2025, the Securities Exchange Commission ("SEC") issued subpoenas to US Bank NA and Wells Fargo Bank NA to obtain Petitioners' personal banking records. (*Id.*) The motion to quash was filed pursuant to 12 U.S.C. § 3410(a). On June 30, 2025, pursuant to 12 U.S.C. § 3410(b), the Court ordered the SEC to file a response, (ECF No. 6), which SEC filed on July 14, 2025, (ECF No. 8). On July 16, 2025, Petitioners filed their reply to the motion to quash in which they also move to strike the SEC's response.[1] (ECF No. 9.) For the reasons discussed below, Petitioners' motion to quash subpoenas and motion to strike are denied.

**I.   FACTUAL BACKGROUND[2] AND PROCEDURAL HISTORY**

Petitioners have been associated with Juro System, Inc. ("Juro System") since December 2021. (ECF No. 8 at 6.) According to public filings, Cosimo Constantinos served multiple roles at the company including "President, Director, CEO, Chairman of

---

[1]   12 U.S.C. § 3410 does not state whether Petitioners are permitted to file a reply to the SEC's response. Nonetheless, the Court will accept the reply and construes their *pro se* filings liberally. *See Johnston v. Hartman*, No. 3:23-CV-00521-MMD-CLB, 2025 WL 1293546, at \*1 (D. Nev. May 5, 2025) ("It is well established that district courts have the inherent power to control their dockets and manage their affairs; this includes the power to strike or deny motions to streamline motion practice and promote judicial efficiency."); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc) ("Presumably unskilled in the law, the pro se litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel.").

[2]   The background facts are taken from the SEC's opposition, which are verified as required by 12 U.S.C. § 3410(b). (ECF No. 8.)

the Board, Treasurer, CFO, Secretary, and/or General Counsel of Juro." (*Id.*) Clarissa Constantinos is listed as an "inside shareholder." (*Id.*) The SEC asserts Juro System was soliciting and receiving investor money but has "not repaid its investors or issued dividends despite the fact some investors have requested repayment." (*Id.*) Juro System accepted investments through multiple mechanisms including the "transfer [of] qualified retirement funds to a self-directed IRA maintained by a specific custodian (the 'Self-Directed IRA Company') that then transferred those funds to Juro" or by directly writing a check to Juro which was "deposited into an unrelated business account ('Business Account A')." (*Id.* at 7.) The SEC asserts that "investor funds were transferred to the [Petitioners' personal] accounts at the two banks to which the SEC issued the subpoenas." (*Id.*)

Juro System was dissolved in September 2023. (ECF Nos. 1 at 24, 8 at 7.) However, "at least three checks were deposited into Business Account A for the benefit of Juro." (ECF No. 8 at 7.) According to the SEC, "the investors understood that Juro would repay them their initial investment with interest. When those investors requested repayment, Juro paid nothing." (*Id.*)

On December 11, 2023, the SEC issued a formal order of investigation of Juro System for alleged violations of Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 and Sections 10(b) and 17A(c) of the Securities Exchange Act of 1934. (*Id.* at 5.) The investigation is premised on information known to the SEC tending to show that Juro System, and those affiliated with it, may have made false statements of material fact, and omitted or failed to disclose material facts regarding the nature of Juro System and related entities, the value of the company's assets, and the use of investor funds. (*Id.* at 6.)

In May 2025, Cosimo Constantino filed a Notice of Exempt Offering of Securities for another Juro entity, Juro Financial Inc. (*Id.* at 8.) Juro Financial Inc. is a holding company for several Juro entities and "is actively offering investors the opportunity to purchase shares of Juro Financial Inc." stock. (*Id.*)

///

On May 21, 2025, the SEC issued subpoenas to US Bank NA and Wells Fargo Bank NA to obtain the Petitioners' personal financial records. (*Id.*) The SEC states it "issued the subpoenas to obtain information about how much money the Juro entities raised and how they used that money as well as to identify other potential investors and other bank accounts." (*Id.* at 9.) The SEC states it "[has] reason to believe that money related to transactions they are investigating has been deposited into the [Petitioners' personal] accounts . . . ." (*Id.* at 5.)

On May 27, 2025, Petitioners filed their motion to quash subpoenas pursuant to the Right to Financial Privacy Act ("RFPA"). (ECF No. 1.) On June 30, 2025, the Court found Petitioners' motion to be procedurally proper under 12 U.S.C. § 3410(a) and ordered the SEC to file a sworn response to Petitioners' motion. (ECF No. 6.) On July 14, 2025, the SEC filed its verified response. (ECF No. 8.) On July 16, 2025, Petitioners filed their reply with a motion to strike the SEC's response. (ECF No. 9.)

## II.     LEGAL STANDARDS

Under the RFPA, 12 U.S.C. § 3401 *et seq.*, a financial institution may disclose a customer's financial records if such records are properly requested by a governmental authority via an administrative or judicial subpoena. The RFPA was enacted by Congress in response to the Supreme Court's ruling in *United States v. Miller*, 425 U.S. 435 (1976), which held that bank customers had no Fourth Amendment right to privacy for financial information held by financial institutions. *See, e.g.*, *In re Blunden*, 896 F. Supp. 996, 999 (C.D. Cal. 1995). The RFPA requires federal government agencies to provide banking customers with notice and an opportunity to object before a bank can disclose personal financial information to the federal government agency. *See* 12 U.S.C. §§ 3401-3402. The RFPA permits challenges by customers of financial institutions to government subpoenas. *See* 12 U.S.C. § 3410(a). Challenges brought under the RFPA proceed in two steps. *See S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984) (noting that "[a] customer's ability to challenge a subpoena [under the RFPA] is cabined by strict procedural requirements").

3

First, the Court analyzes whether the movant complied with the procedural requirements for seeking relief as established in 12 U.S.C. § 3410(a). This section establishes the timing requirements for seeking relief, the service requirements of the request for relief, and the manner in which a challenge is made. *See id.* The motion must include an affidavit or sworn statement stating that:(1) the applicant is a customer of the financial institution from which financial records pertaining to him have been sought, and (2) the applicant's reasons for believing that the financial records sought are not relevant to a legitimate law enforcement inquiry or that there has otherwise not been substantial compliance with this law. *Id.* After this initial inquiry is completed, the Court must then order the Government to file a sworn response. *See* 12 U.S.C. § 3410(b).

Once the Government files its sworn response as ordered, the Court proceeds to the second step of the process. At this stage, the RFPA "narrowly constrains the range of decisions which the Court may make with regard to motions to quash." *Blunden*, 896 F. Supp. at 999 (citing *Collins v. Commodity Futures Trading Comm.*, 737 F. Supp. 1467, 1478 (N.D. Ill. 1990)). There are only three relevant questions for the court to consider, whether: (1) "the law enforcement inquiry is legitimate;" (2) there is a "reasonable belief that the records sought are relevant to [the law enforcement] inquiry;" and (3) "there has not been substantial compliance with the provisions of" the RFPA. 12 U.S.C. § 3410(c); s*ee Arthur v. United States Sec. & Exch. Comm'n*, No. 2:20-CV-00158-GMN-NJK, 2020 WL 4498468, at *3 (D. Nev. May 20, 2020). "'The ultimate burden of showing that the records sought are relevant to a legitimate law enforcement inquiry is on the government.'" *In re Blunden*, 896 F. Supp. at 999 (quoting *Collins*, 737 F. Supp. at 1480).

When this two-step process is followed, "a court presented with such a challenge is required to rule upon it within seven days of the Government's response." *Jerry T. O'Brien, Inc.*, 467 U.S. at 746 (citing 12 U.S.C. § 3410(b)). In ruling on the motion, the Court may rely on the parties' sworn statements and any additional proceedings the Court finds appropriate. *See* 12 U.S.C. § 3410(b). "A declaration of a government official attesting to the commencement of investigation is sufficient to establish that the law

enforcement inquiry is legitimate, and records are relevant." *Tabet v. U.S. S.E.C.*, No. 12-CV-1596-IEG-DHB, 2012 WL 3205581, at *1 (S.D. Cal. Aug. 6, 2012) (cleaned up) (quoting *Rosiere v. U.S. S.E.C.*, No. 2:09-CV-01975-JCM-PAL, 2010 WL 489526, at *3 (D. Nev. Feb. 5, 2010)).

"A court ruling denying a motion or application under this section shall not be deemed a final order and no interlocutory appeal may be taken therefrom by the customer." 12 U.S.C. § 3410(b). A Petitioner "cannot appeal an adverse determination until the Government has completed its investigation." *Jerry T. O'Brien, Inc.*, 467 U.S. at 746 (citing 12 U.S.C. § 3410(b)).

### III.   DISCUSSION

On June 30, 2025, the Court found Petitioners' motion to quash to be procedurally proper pursuant to 12 U.S.C. § 3410(a) and ordered the SEC to file a sworn response to the Petitioners' motion. (ECF No. 6.) On July 14, 2025, the SEC filed its verified response. (ECF No. 8.) The Court first addresses the motion to quash and then the motion to strike.

#### A.   Motion to Quash Subpoenas pursuant to 12 U.S.C. § 3410

##### 1.   Legitimate Law Enforcement Inquiry

An administrative agency with statutory authority to engage in investigative and accusatory duties may "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *U.S. v. Morton Salt Co.*, 338 U.S. 632, 642 (1950); *see Dawson v. U.S. Dep't of Veterans Affs.*, 2022 WL 891110, at *1 (S.D. Cal. Mar. 24, 2022) (an administrative agency with statutory authority to engage in investigative and accusatory duties may "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not."). "When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law." *Morton Salt Co.*, 338 U.S. at 642. "[T]he question is . . . whether the government has a reasonable belief . . . ." *Echavarria v. Dep't of Defense*, 2023 WL 3872173, at *1 (E.D. Cal. May 15, 2023). "'What need be shown is not probable cause, but a good reason to

5

1  investigate.'" *Id.* (quoting *Feiner v. U.S. S.E.C.*, 914 F. Supp. 2d 474, 478 (S.D.N.Y. 2012)); *see Tabet*, 2012 WL 3205581, at *1. "An investigation is legitimate if it is one the agency is authorized to make and is not being conducted solely for an improper purpose such as political harassment or intimidation or otherwise in bad faith." *Pennington v. Donovan*, 574 F. Supp. 708, 709 (S.D. Tex. 1983).

Petitioners assert the two accounts subpoenaed by the SEC are "strictly personal in nature with no connection to securities transactions or any business activities of JURO SYSTEM INC." (ECF No. 1 at 4-5, 6-7.) In response, the SEC argues it is conducting a legitimate law enforcement investigation. (ECF No. 8 at 6-7.) SEC asserts the investigation is pursuant to the Formal Order that was issued on December 11, 2023 regarding information the SEC received pertaining to potential violations by Petitioners and Juro System for "ma[king] false statements of material fact or [failing] to disclose material facts concerning, among other things, the use of investor funds." (*Id.* at 5-6.) The SEC further asserts "Juro has not repaid its investors either their principal amount or the dividends despite the fact that some investors requested repayment. The Staff also found evidence tending to show that investor money was transferred to the accounts at the two banks to which the SEC issued the subpoenas that Clarissa Constantinos is challeng[ing]." (*Id.* at 2.) The SEC also asserts that while Juro System was dissolved, Cosimo Constantinos operates Juro Financial Inc, "which is actively offering investors the opportunity to purchase shares of Juro Financial Inc." and "is the holding company for several Juro entities." (*Id.* at 4.)

Congress has authorized the SEC to investigate possible violations of the federal securities laws. *See Jerry T. O'Brien, Inc.*, 467 U.S. at 741 ("Congress has vested the SEC with broad authority to conduct investigations into possible violations of the federal securities laws and to demand production of evidence relevant to such investigations."); 15 U.S.C. §§ 77t(a)-(c), 78u(a)-(b). Because the SEC here issued a Formal Order to obtain information on whether Petitioners violated federal securities laws, a "demonstrable reason [exists] to believe that the law enforcement inquiry is legitimate."

12 U.S.C. § 3410(c); *see Gutierrez v. U.S. SEC*, No. 2:22-MC-0054-FMO-PVCX, 2022 WL 2101769, at *2 (C.D. Cal. Apr. 27, 2022). The SEC's assertions that it has obtained evidence which suggest Petitioners made an illegal security offering, made misleading statements of material fact to investors, and unlawfully transferred investor funds into personal accounts provide a proper basis to conduct a law enforcement inquiry that is within the SEC's investigative authority. *See Jerry T. O'Brien, Inc.*, 467 U.S. at 741; 12 U.S.C. § 3410(c). As such, the Court is satisfied that the investigation into Juro System and Petitioners by the SEC is a legitimate law enforcement inquiry.

### 2.     Relevance of Information Sought

"[T]he RFPA requires only that financial information be relevant to a 'legitimate law enforcement inquiry,' and not relevant in a narrow, evidentiary sense." *United States v. Wilson*, 571 F. Supp. 1417, 1420 (S.D.N.Y. 1983). "For purposes of an administrative subpoena, the notion of relevancy is a broad one." *Sandsend Fin'l Consultants, Ltd. v. Fed. Home loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989). The subpoenaed information is relevant if it "touches a matter under investigation." *Id.* "This is not a high burden: 'Once a person's connection to apparently illicit conduct has been shown, it is relevant to know whether that person's bank account contains evidence of such conduct.'" *Echavarria*, 2023 WL 3872173, at *1 (*quoting Feiner*, 914 F. Supp. 2d at 478); *see Han v. SEC*, 2019 WL 4543099, at *2 (C.D. Cal. July 10, 2019) ("[I]f the material sought by the subpoena 'touches on a matter under investigation, an administrative subpoena will survive a challenge that the material is not relevant.'").

The SEC asserts it has "reason to believe that money related to transactions they are investigating has been deposited into the [Petitioner's personal] accounts . . . ." (ECF No. 8 at 5.) "[T]he phrase 'reason to believe' does not mean any reason, no matter how theoretical or remote, while the phrase 'legitimate law enforcement purpose' is intended to impose a standard lower than 'probable cause.'" *Hunt v. U. S. S.E.C.*, 520 F. Supp. 580, 603 (N.D. Tex. 1981).

///

Petitioners' banking records are pertinent to the issues under investigation because they will illuminate whether Petitioners unlawfully transferred investor funds into the Petitioners' personal accounts and whether Petitioners made proper disclosures to the SEC. *See Doe v. U.S. S.E.C.*, No. 22-MC-80301-LB, 2023 WL 2351653, at *8 (N.D. Cal. Mar. 4, 2023). Such information has long been found to be within the broad scope of relevant information pertinent to SEC investigations like this one. *See, e.g.*, *Echavarria*, 2023 WL 3872173, at *1; *Feiner*, 914 F. Supp. 2d 474, 478 (S.D.N.Y. 2012) ("Once a person's connection to apparently illicit conduct has been shown, it is relevant to know whether that person's bank account contains evidence of such conduct. . . . The SEC's task is to follow the money."); *Karlis v. S.E.C.*, 613 F. Supp. 2d 150, 153 (D. Mass. 2009) (finding a spouse's personal banking records to be relevant as they "could potentially assist [] in determining the amount of [Petitioner's] allegedly ill-gotten gains, whether he attempted to conceal them and whether others were involved in such conduct"); *Dawar v. Dep't of Hous. & Urban Dev.*, 820 F. Supp. 545, 547 (D. Kan. 1993) (noting that if the subject of an investigation "did misappropriate funds, it is not unreasonable to hypothesize that he may have deposited those funds in his wife's account"); *In re U.S. S.E.C. Priv. Investigation/Application of John Doe Re Certain Subpoenas*, No. M8-85-MBM, 1990 WL 119321, at *2 (S.D.N.Y. Aug. 10, 1990) ("By showing that [the customer] has a connection to activity [the SEC] is charged to investigate, the SEC has shown reason for a belief that the bank records it [is seeking contains] relevant information.").

In reply, Petitioners assert the "subpoenas are overly broad, not narrowly tailored," and "vague" because the "SEC has not alleged–nor could it credibly assert–that any investor wired funds directly into either of these accounts." (ECF No. 9 at 3.) Petitioners further assert that "[t]here is no evidence that any investor funds were ever deposited into these personal accounts." (*Id.*) But Petitioners' argument falls short when considering that the point of the whole of administrative subpoenas is for the agency is develop the evidence through its investigation. *See United States v. Clarke*, 573 U.S. 248, 254 (2014) (The purpose of a document summons "is not to accuse, much less to adjudicate, but

only to inquire."). At this stage of an SEC investigation, the SEC need not present evidence of unlawful conduct and neither the Court nor the SEC is obligated to rely on assertions by Petitioners that unlawful transactions or agreements between Juro System, investors, or Petitioners did not take place. *See SEC v. Felix Invs., LLC*, No. 16-CV-01386-EMC, 2023 WL 11897614, at *1 (N.D. Cal. Mar. 16, 2023) (internal citation and quotation marks omitted) ("Inspection of third-party bank records is permissible when inspection of the bank records . . . could lead to the discovery of concealed assets . . . ."); *Porrazzo v. U.S. SEC*, 2018 WL 1598655, at *5 (D. Haw. Apr. 2, 2018) ("[T]he SEC is not required to accept Movants' statements without the opportunity to confirm them through examination of the records referenced in the Contested Subpoenas."). The SEC need only show it has a reasonable basis to conduct a law enforcement inquiry and evidence sought is relevant to the inquiry. *See* 12 U.S.C. § 3410(a)-(c); *e.g.*, *Blunden*, 896 F.Supp. at 1000 (declaration of government official attesting to commencement of investigation following receipt of criminal report from bank sufficient to establish demonstrable reason to believe law enforcement inquiry is legitimate, and records are relevant); *Davidov v. SEC*, 415 F. Supp. 2d 386, 391 (S.D.N.Y. 2006) ("What need be shown is not probable cause, but good reason to investigate.").

Accordingly, the SEC has adequately demonstrated the bank records sought by the subpoena are relevant to a legitimate law enforcement inquiry.

### 3.    Substantial Compliance with RFPA

Petitioners did not assert any arguments regarding the SEC's failure to comply with the RFPA. (*See* ECF Nos. 1, 8.) The SEC served the subpoenas on U.S. Bank and Wells Fargo Bank on May 21, 2025. (ECF No. 8 at 1.) Petitioners acknowledge receipt and notice of the subpoenas by the SEC on the same day. (ECF No. 1 at 1.) The Court concludes that, in issuing the Subpoenas, the SEC has substantially complied with RFPA's provisions. Because the SEC's law enforcement inquiry is legitimate, the records sought by the subpoenas are relevant to that inquiry, and there are no concerns of failing to comply with the RFPA, Petitioners' motion is denied.

### B. Petitioners' Motion to Strike

In the reply brief to the SEC's response, Petitioners move to strike the response and impose sanctions because the signature block in the SEC's response "is at best misleading, and at worst, invalid." (ECF No. 9 at 6.) Petitioners note that the response is signed by the attorney of record, James M. McHale, but contains the "accompanying name and credentials belong[ing] to Melinda Hardy." (ECF No. 9 at 6.) Petitioners assert the response should be stricken because Ms. Hardy "is not an attorney of record in this case" and the response violates Fed. R. Civ. P. 11(a) and Local Rule IA 11-1. (*Id.*) Petitioners' motion to strike fails for several reasons and is therefore denied.

First, Rule 11(a) of the Rules of Civil Procedure requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name . . . ." Fed. R. Civ. P. 11(a) only permits a Court to "strike an *unsigned* paper . . . ." Mr. McHale, who is the attorney of record, did in fact sign the SEC's response. (*See* ECF No. 9 at 14.) The SEC's response here is neither unsigned nor signed by an attorney who is not the attorney of record. (*See id.*)

Second, it is routine, proper, and expected that filings on behalf of government agencies list multiple attorneys as counsel for the agency and authors of a filing. The fact that Fed. R. Civ. P. 11(a) states "*at least* one attorney" implies that it is acceptable under the rules for more than one attorney to be listed as counsel for a party. *See also Johnson v. University College*, 706 F.2d 1205, 1208 (11th Cir.1983) ("[T]he participation of more than one attorney constituted a reasonable necessity, given the complexity of legal issues and the breadth of factual evidence involved in this case"). Here, the filing lists both Ms. Hardy's and Mr. McHale's names, address, email address, and telephone number. (*See* ECF No. 8 at 15.) The Court has no reason to believe the SEC's response is procedurally defective, in violation of the federal rules of civil procedure or the local rules, or otherwise in bad faith.

Accordingly, the Court denies Petitioners' motion to strike the SEC's response.

///

## IV. CONCLUSION

The Court notes the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines they do not warrant discussion as they do not affect the outcome of the issues before the Court.

**IT IS THEREFORE ORDERED** that Petitioners' motion to quash subpoenas, (ECF No. 1), is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioners' motion to strike, (ECF No. 9), is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk **ENTER JUDGMENT** and **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**DATED**: July 18, 2025

_____
**UNITED STATES MAGISTRATE JUDGE**